## IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **ALON LANIR,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:19-cv-1203** |
| | ) | |
| **YORKTOWN SYSTEMS GROUP, INC.,** | ) | |
| **Defendant.** | ) | |

### <u>MEMORANDUM OPINION</u>

At issue in this Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* matter are the parties' cross motions for summary judgment. The matter has been fully briefed and argued, including a telephonic hearing that occurred on September 30, 2020. For the reasons stated below, Plaintiff's Motion for Partial Summary Judgment must be denied, and Defendant's Motion for Summary Judgment must be granted in part and denied in part.

### I.

Plaintiff Alon Lanir, an at-will Hebrew language instructor diagnosed with Asperger's Syndrome, was previously employed by Defendant Yorktown Systems Group, Inc., a government contractor, to teach Hebrew at the Department of State's Foreign Service Institute ("FSI"). Plaintiff's at-will employment with Defendant depended solely on an active FSI teaching assignment, and Plaintiff's final FSI teaching assignment was a term assignment ending on February 15, 2019. Thus, Plaintiff's at-will employment with Defendant was scheduled to end on February 15, 2019.

In the year preceding Plaintiff's pre-determined end date, several FSI students complained about Plaintiff's teaching, and accordingly, Plaintiff received two deficiency reports from FSI regarding these student complaints. Plaintiff's worksite supervisor, Government Technical

Monitor ("GTM") Roula Hickman, a government employee, also complained about Plaintiff's work performance, as Hickman felt that Hickman had to spend an inordinate amount of time instructing Plaintiff on the specific details of Plaintiff's classroom assignments.  Specifically, Hickman complained that Hickman spent more time providing Plaintiff with instructions than all other FSI language instructors combined, and that Plaintiff called and emailed her excessively.

On December 4, 2018, two months prior to Plaintiff's pre-determined end date, Plaintiff had a disagreement with Hickman about Plaintiff's work performance.  Shortly thereafter, on December 10, 2018, Plaintiff filed an ADA accommodation request with Defendant, requesting that Defendant require Hickman, an FSI employee, to accommodate Plaintiff's disability by providing clearer and more explicit instructions to Plaintiff about classroom assignments.  Plaintiff later amended his ADA accommodation request to request the following:

> I need instructions given to me to be very specefic [sic] and that my GTM would be willing to answer questions, no matter how mundane they may be.  I also need a little understanding.  I also need instructions given to me to be consistent and in writing.  I also need to have someone to turn to if I have questions.  I also need my GTM to be sensitized as to how to interact with autistic people.[1]

Defendant declined to provide Plaintiff these specific accommodations, in part because, as the parties now agree, Defendant could not require Hickman, a non-employee, to alter her behavior toward Plaintiff or to perform certain tasks.  Nonetheless, on December 13, 2018, Defendant elected to respond to Plaintiff's accommodation request by placing Plaintiff on a Performance Improvement Plan ("PIP").  This PIP provided Plaintiff with five specific instructions designed to improve his relationship with Hickman.  Notably, however, the PIP informed Plaintiff that failure to improve his relationship with Hickman could result in further disciplinary action, including termination of Plaintiff's at-will employment.  Specifically, the PIP stated:

---

[1] Pl.'s Dep. Exs. at 2 (Dkt. 33-4).

> Corrective Actions: Review all tasks carefully to ensure understanding . . . After reviewing tasks assigned, prepare a brief summary of questions and points of clarification to submit to [Hickman] . . . Send the summary [to Hickman] in the body of an email; not as an attachment . . . Do not use the delivery notification or read receipt function when communicating with [FSI] . . . Review the response from [Hickman]. If there is something you still are not sure of, seek additional assistance from [Steve Sabia, Defendant's Program Manager for Language Instruction].
>
> . . .
>
> Should your performance remain at an unacceptable level it could result in further disciplinary action, up to and including termination of employment.[2]

On February 15, 2019, FSI declined to extend Plaintiff's teaching assignment beyond Plaintiff's February 15, 2019 pre-determined end date, and accordingly, Defendant terminated Plaintiff on that day for lack of a work assignment. Following Plaintiff's termination, Plaintiff brought this ADA action against Defendant,[3] alleging the following four claims:

> (1) Count 1 alleges an ADA claim for failure to accommodate based on Defendant's alleged failure to accommodate Plaintiff's disability following Plaintiff's ADA accommodation request;
>
> (2) Count 2 alleges an ADA claim for retaliation based on Plaintiff's placement on a PIP following Plaintiff's ADA accommodation request;
>
> (3) Count 3 alleges an ADA claim for disability discrimination based chiefly on Plaintiff's termination from employment;[4] and
>
> (4) Count 4 alleges an ADA claim for retaliation based on Plaintiff's termination from

---

[2] *Id.* at 6.

[3] Neither FSI nor the Department of State ("DOS") is a party to this action, as neither is a covered employer under the ADA. *See* 42 U.S.C. § 12111(5)(B); *see also Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). Accordingly, Plaintiff has represented that Plaintiff "is separately pursuing claims against FSI" in a different lawsuit under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, a statute which governs disability discrimination by the federal government. *See* Pl.'s Reply at 21 n.8 (Dkt. 51). Neither party has provided any detail about this other lawsuit.

[4] Count 3 also alleges that Defendant failed to investigate Hickman and FSI for allegedly discriminating against Plaintiff. *See* Compl. ¶ 76 (Dkt. 1). This aspect of Count 3 is plainly contradicted by the record. The record establishes that Defendant did in fact investigate Plaintiff's complaint of disability discrimination, meeting with Plaintiff, Hickman, and two other FSI employees to investigate Plaintiff's complaint of disability discrimination.

employment, which occurred two months after Plaintiff's ADA accommodation request.

At issue now are the parties' cross motions for summary judgment. Defendant seeks summary judgment on all claims, arguing that Defendant did all it could in response to Plaintiff's accommodation request, and that Defendant neither discriminated against Plaintiff on the basis of Plaintiff's disability nor retaliated against Plaintiff for engaging in protected activity. For his part, Plaintiff opposes Defendant's Motion for Summary Judgment and seeks summary judgment as to Count 1, arguing that Defendant did not adequately respond to Plaintiff's accommodation request. The parties have fully briefed and argued their positions and thus the matter is now ripe for disposition.

## I.

A *prima facie* case for failure to accommodate requires a plaintiff to establish (1) that he or she has a qualifying disability under 29 U.S.C. § 705(20); (2) that the defendant had notice of plaintiff's disability; (3) that the plaintiff could perform the essential function of the job with a reasonable accommodation; and (4) that the defendant refused to make any reasonable accommodation. *See Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 414 (4th Cir. 2015); *see also Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (same). If a plaintiff establishes a *prima face* case for failure to accommodate, a defendant nonetheless "avoids liability [under the ADA] if it can show as a matter of law that the proposed accommodation 'will cause undue hardship in the particular circumstances.'" *Reyazuddin*, 789 F.3d at 414 (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012)).

Here, for Count 1, an ADA claim for failure to accommodate, there are genuine disputes of material fact with respect to both Plaintiff's *prima facie* case and Defendant's undue hardship defense. First, there are genuine disputes of material fact regarding element four of Plaintiff's

*prima facie* case, namely whether Defendant failed to afford Plaintiff a reasonable accommodation under the circumstances.  Importantly, the ADA does not require an employer to provide the "exact accommodation" requested,[5] especially where, as here, the requested accommodation—altering the behavior and actions of a non-employee—is admittedly beyond the employer's control.[6]  But the ADA nonetheless requires, at a minimum, that an employer forward the employee's accommodation request to the party able to provide the requested accommodation—in this case, FSI, the party employing Hickman—and that Plaintiff, Defendant, and FSI then engage in an interactive process to consider whether an accommodation is warranted under the circumstances, and if so, the nature of such an accommodation.  *See, e.g.*, *Haneke v. Mid-Atl. Capital Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2000) (citing 29 C.F.R. § 1630.2(o)(3) ("Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation."); *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 322–23 (4th Cir. 2011) (same).[7]  In this respect, an employer may be liable for failure to accommodate if the record establishes that "'had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to

---

[5] *See Reyazuddin*, 789 F.3d at 415 (employer not required to provide the "exact accommodation that the employee request[s]"); *see also Hanna P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019) (same).

[6] *See Gaul v. Lucent Tech., Inc.*, 134 F.3d 576, 581 (3d Cir. 1998) (requested accommodation was beyond the employer's control and thus was unreasonable); *see also Hill v. Kansas City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999) (same); *Adams v. Wells Fargo Advisors, LLC*, No. 12-cv-2130, 2014 WL 2124447, at *18 (D. Md. 2014) (same).

[7] *See EEOC Enforcement Guidance: Application of the ADA to Contingent Workers Placed by Temporary Agencies and Other Staffing Agencies*, EEOC, 2000 WL 33407189, at *7 (Dec. 22, 2000) ("Both [the staffing agency and worksite] should engage in an informal interactive process with the worker to clarify what [the worker] needs and to identify the appropriate reasonable accommodation.").  Although this EEOC Guidance, by its terms, applies most clearly to cases in which the plaintiff has specifically pled a joint employer theory, there is no reason not to apply this Guidance here, as the record makes clear that Defendant and FSI shared or co-determined "those matters governing the essential terms and conditions of employment."  *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 408 (4th Cir. 2015); *see also id.* at 411 n.6 (EEOC Guidance entitled to some deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *Vance v. Ball State Univ.*, 570 U.S. 421, 431 n.4 (2013) (EEOC Guidance entitled to deference insofar as the Guidance "has the power to persuade").

perform the job's essential functions.'" *Wilson*, 717 F.3d at 347 (quoting *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 91 (1st Cir. 2012)).

Here, there are genuine disputes of material fact regarding the adequacy of the interactive process undertaken here and the reasonableness of the accommodation Defendant provided to Plaintiff.  In this respect, the parties sharply dispute (1) whether Defendant forwarded Plaintiff's accommodation request to FSI in adequate detail, (2) whether Defendant adequately discussed the substance of Plaintiff's accommodation request with Plaintiff and FSI in effort to determine an appropriate accommodation, and (3) whether Plaintiff's PIP was an appropriate accommodation under the circumstances.[8]  Notably, Defendant's duty to coordinate with FSI and Plaintiff to consider an appropriate accommodation is not eliminated by the fact that FSI is not Plaintiff's direct employer.  Nor is Defendant's duty to coordinate with FSI and Plaintiff eliminated by the fact that Plaintiff contacted the Department of State's Office of Civil Rights to file a discrimination complaint against Hickman, as this complaint concerned allegations of discrimination and did not focus on the issue of a reasonable accommodation.  Accordingly, there are genuine disputes of material fact with respect to Count 1 and summary judgment must be denied for that count.

Second, genuine disputes of material fact remain as to whether the requested accommodation would have resulted in undue hardship to Defendant.   In this respect, the undue hardship defense is available where the appropriate accommodation is beyond the employer's control and the employer makes a "good faith, but unsuccessful, effort[] to obtain the [controlling party's] cooperation in providing the reasonable accommodation."[9] And here, there are genuine

---

[8] *See Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994) (collecting circuit cases holding that the issue of a "'reasonable accommodation' is a question of fact"); *Reyazuddin*, 789 F.3d at 416 (applying this principle); *Williams v. Va. Polytechnic Inst. & State Univ.*, 451 F. Supp. 3d 467, 475–76 (E.D. Va. 2020) (same); *Crump v. TCoombs & Assoc., LLC*, 2015 WL 5601885, at \*41–42 (E.D. Va. Sep. 22, 2015) (same).

[9] *Enforcement Guidance: Application of the ADA to Contingent Workers Placed by Temporary Agencies and Other Staffing Firms*, 2000 WL 2000 WL 33407189, at \*10.

disputes of material fact as to whether Defendant made a good faith effort to secure FSI's cooperation in obtaining an accommodation. Specifically, the record does not make clear (1) whether Defendant sought FSI's cooperation in obtaining Plaintiff's requested accommodation and (2) whether, in response to Defendant's efforts, FSI refused to provide the requested accommodation. Accordingly, for this additional reason, there are genuine disputes of material fact with respect to Count 1 and summary judgment must be denied for that count.

## II.

Defendant's motion for summary judgment must be denied with respect to Count 2, an ADA claim for retaliation based on Plaintiff's placement on a PIP following Plaintiff's ADA accommodation request. This is so for two reasons. First, although a PIP may not be an adverse employment action for the purposes of an ADA discrimination case,[10] the Fourth Circuit has not yet made clear whether a PIP qualifies as a materially adverse employment action under the lesser standard applicable in an ADA retaliation case.[11] And here, there is a genuine dispute of material fact as to whether the PIP qualifies as materially adverse employment action, as the record does not make clear whether the December 14, 2018 PIP "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laird v. Fairfax Cty., Va.*, 978 F.3d 887, 893 (4th Cir. 2020). Second, there is a genuine dispute of material fact as to whether Defendant's proffered non-discriminatory rationale for placing Plaintiff on the PIP was pretext. Accordingly, there are genuine disputes of material fact with respect to Count 2 and summary judgment must be denied for that count.

---

[10] *See Jensen-Graf v. Chesapeake Emp'rs Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015); *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015).

[11] *See Emani v. Bolden*, 241 F. Supp. 3d 673, 685 (E.D. Va. Mar. 10, 2017) ("The Fourth Circuit has not categorically held that a negative performance plan or placement on a PIP constitutes, or fails to constitute, a materially adverse action.").

**III.**

Summary judgment, however, must be granted to Defendant with respect to Counts 3 and 4, ADA claims for discrimination and retaliation, respectively, based on Plaintiff's February 15, 2019 termination.  This is so because Defendant has provided a legitimate non-discriminatory reason for Plaintiff's termination, namely that there was no work for Plaintiff to do after February 15, 2019 and thus Defendant had no reason to keep Plaintiff on the payroll past this pre-determined end date for Plaintiff's term assignment.[12]  Nor has Plaintiff presented a triable issue of fact as to whether Plaintiff's February 15, 2019 termination for this reason was pretext for unlawful discrimination.  Indeed, Plaintiff's claim of pretext is contradicted by the uncontested fact that Defendant submitted Plaintiff's name for open FSI language instructor positions after Plaintiff's February 15, 2019 termination and that FSI declined to select Plaintiff at this time.  Thus, the record is clear that Defendant sought to continue employing Plaintiff past February 15, 2019 and that therefore there is no issue of fact that Defendant's proffered rationale for Plaintiff's termination were not pretext.

Seeking to avoid this conclusion, Plaintiff argues that Defendant's proffered rationale for terminating Defendant is pretext because Ora Kaufman, another Hebrew language instructor, worked at FSI past February 15, 2019 until July 2, 2020.[13]  Plaintiff's argument is unpersuasive.

---

[12] *See Grav v. Newlan*, 917 F.3d 557 (Table), 1990 WL 169224 at *3 (4th Cir. 1990) (affirming district court's grant of summary judgment in employment discrimination case to employer who terminated employee for "lack of work"); *see also Parks v. Thomas Built Buses, Inc.*, No. 02-cv-595, 2003 WL 22705389, at *2 (M.D.N.C. Oct. 8, 2003) (granting summary judgment in employment discrimination case to employer who terminated employee at the conclusion of a "temporary assignment").

[13] Defendant has filed a motion to strike the portions of Plaintiff's declaration regarding Ora Kaufman, in which Plaintiff states that Kaufman worked for Defendant past February 15, 2019.  *See* Def.'s Mot. to Strike (Dkt. 49).  In this respect, Defendant argues that this information about Kaufman must be stricken and thus disregarded because Plaintiff lacks personal knowledge of Kaufman's employment dates.  Ultimately, Defendant's Motion to Strike must be denied; Plaintiff worked closely with Kaufman at FSI—indeed, Kaufman and Plaintiff were the only two Hebrew language instructors at FSI—and therefore Plaintiff has an adequate basis to testify that Kaufman worked past February 15, 2019.  Notably, Defendant does not argue that Plaintiff's understanding of Kaufman's employment dates is incorrect, discussing the same dates in support of Defendant's Motion for Summary Judgment.

Nothing about Kaufman's post-February 15, 2019 employment alters the fact that FSI did not want Plaintiff to work at FSI past February 15, 2019, and that therefore there was no work for Plaintiff to do at FSI after February 15, 2019 and thus no reason for Defendant to keep Plaintiff on the payroll past that day.  Further, on July 2, 2020, FSI declined to extend Kaufman's assignment and accordingly, Defendant terminated Kaufman for lack of a work assignment, applying the same rationale that Defendant used to terminate Plaintiff.   Accordingly, Defendant's Motion for Summary Judgment must be granted with respect to Counts 3 and 4.

## IV.

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment must be denied, and Defendant's Motion for Summary Judgment must be granted in part and denied in part.  Specifically, Defendant's Motion for Summary Judgment must be denied with respect to Counts 1 and 2 but granted with respect to Counts 3 and 4.  The matter will proceed to trial solely on Counts 1 and 2, ADA claims for failure to accommodate and retaliation, respectively.

An appropriate Order will issue separately.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
March 19, 2021

/s/
T. S. Ellis, III
United States District Judge